# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### JACKSONVILLE DIVISION

| | |
|---|---|
| BIG VOICES MEDIA, LLC <br><br> Plaintiff <br><br> v. <br><br> TED WENDLER, LUCILLE COBERLY, PATRICIA DEFAZIO, STEVE DEFAZIO, JAMES H. POST and JACQUELIN POST, <br><br> Defendants | Civil No. 3:12-cv-242-J-99MMH-JBT |
| TED WENDLER, LUCILLE COBERLY, PATRICIA DEFAZIO, STEVE DEFAZIO, JAMES H. POST and JACQUELIN POST, <br><br> Counter-Plaintiffs <br><br> v. <br><br> BIG VOICES MEDIA, LLC  and BILLIE TUCKER, <br><br> Counter-Defendants | |

## BIG VOICES MEDIA, LLC AND BILLIE TUCKER'S MOTION TO COMPEL DEFENDANTS TO PROVIDE BETTER ANSWERS TO FIRST SET OF INTERROGATORIES, ANSWER SECOND SET OF INTERROGATORIES, AND PRODUCE TEXT MESSAGES

Big Voices Media ("BVM" or "Company") and Billie Tucker ("Ms. Tucker") move to compel the Defendants to (1) provide better answers to BVM and Ms. Tucker's First Set of Interrogatories, (2) answer BVM and Ms. Tucker's Second Set of Interrogatories, and (3) produce text messages.  Pursuant to Local Rule 3.01(g), BVM and Ms. Tucker's counsel

1

conferred with Defendants' counsel in a good faith effort to reach agreement on the relief sought in this Motion, but Defendants do not assent to the relief sought.

## I.  INTRODUCTION

Defendants have failed to answer 21 out of 24 Interrogatories[1] and have failed to produce text messages.  BVM and Ms. Tucker propounded a first set of 16 Interrogatories on June 4, 2012 ("First Set of Interrogatories"), and a second set of 8 "contention" Interrogatories on July 27, 2012 ("Second Set of Interrogatories").  Of the First Set of Interrogatories, Defendants failed to provide substantive answers to 13 of them.  Interrogatory No. 3 seeks information regarding Defendants' past civil and criminal litigation history, and Interrogatory Nos. 4-15 seek information regarding communications the Defendants had with various individuals.  Defendants objected to Interrogatory No. 3 based on relevance.  They provided boilerplate objections to Interrogatory Nos. 4 – 15 and directed BVM and Ms. Tucker, instead, to obtain the information they seek from documents and depositions.  BVM and Ms. Tucker provided the Defendants with clear legal authority requiring them to answer these Interrogatories, but they refused to comply.

The Defendants also failed to answer the Second Set of Interrogatories in their entirety because they claim the simultaneous document requests included with all the Interrogatories count as separate and discreet requests, and, thus, they exceed the 25-Interrogatory limit.  Yet they waived this objection when they answered the First Set of Interrogatories and failed to raise it.  Even if they did not waive it, the simultaneous document requests are mirrored by identical document requests in BVM and Ms. Tucker's Requests for Production.  Moreover, BVM and Ms. Tucker offered to redact the simultaneous document requests, and courts have, in the past,

---

[1] BVM and Ms. Tucker believe Defendants have also failed to answer Interrogatory No. 16 of the First Set of Interrogatories, bringing the total number to 22 Interrogatories.  However, given that Interrogatory No. 16 concerns allegedly privileged information, they will wait until they evaluate the Defendants' privilege log before determining whether relief from this Court is necessary.

ordered parties to answer similar interrogatories as redacted.  The Defendants, nevertheless, refused to answer the Interrogatories—again, despite being provided with legal authority requiring a response.

BVM and Ms. Tucker also propounded a set of Requests for Production on June 4, 2012 that seek various categories of relevant documents, including text messages.  Defendants have refused, however, to produce text messages.  They first claimed they were "not reasonably accessible" because of undue burden or cost, yet they have failed to provide any documented estimate to support that contention.  Rather, BVM and Ms. Tucker proposed a *free* method for extraction of Iphone text messages and a flat $500-per-phone estimate for extraction of text messages on other mobile devices.  Next, they claimed text messages were not included in the parties' Agreed Discovery Protocol.  That is false: the Protocol broadly covers an array of electronically-stored information and does not exclude text messages.  Moreover, both the Federal Rules and the case law support production of text messages.  Finally, the Defendants attempted to condition their production of text messages on BVM and Ms. Tucker's production of Clyde Fabretti's text messages.  But there is no authority that allows one party to unilaterally condition its production of documents on another party's production.  Moreover, BVM and Ms. Tucker do not have possession, custody, or control of any of Mr. Fabretti's documents, including his mobile phone and text messages.  See Doc. #30 at 3-13.

To date, BVM and Ms. Tucker have produced approximately 9,000 pages of documents, with approximately another 5,000 – 10,000 pages of documents being prepared for supplemental production.  The Defendants have only had to produce approximately 1,100 pages.  The production of text messages at minimal expense is not burdensome, particularly in light of Defendants' exponentially smaller overall burden of production.

The Defendants initiated the legal demands in this case and were bold enough to accuse BVM and Ms. Tucker of, among other things, fraud, negligent misrepresentation, and federal securities violations.  These claims principally depend on communications between the parties and the intent of BVM and Ms. Tucker.  There is no dispute the burden is on the Defendants to prove those claims.  Yet they have failed to provide a single description of any communication in response to the First Set of Interrogatories.  Also, by failing to answer the Second Set of Interrogatories, they have failed to explain the bases for several critical contentions they have made.  If left unsupported, those conclusory allegations will be fatal to their claims.  Finally, Defendants' refusal to produce text messages ignores the requirements of Rules 26 and 34 and has deprived BVM and Ms. Tucker of relevant, discoverable information.

Defendants' refusal to provide any of this information is—to borrow their words—"calculated to do nothing more tha[n] provide as little information as possible, to stymie the rules of discovery . . . , and to impede . . . access to relevant documentation."  See Doc. #77 at 12.  The Court should grant this Motion and order Defendants to pay BVM and Ms. Tucker's reasonable expenses, including attorney's fees, incurred in bringing it.  Defendants are not substantially justified in refusing to produce the information requested because applicable law—which was provided to the Defendants before this Motion was filed—requires that they provide it.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  First Set of Interrogatories

BVM and Ms. Tucker propounded a set of 16 Interrogatories to each Defendant on June 4, 2012.  Defendants provided inadequate answers to Interrogatory Nos. 3-15.  **Interrogatory No. 3** stated as follows:

> 3.     Please state whether you are currently involved in, or have ever been involved in, during the past five (5) years, any civil lawsuits or claims, criminal actions, or administrative actions.  If so, for each such matter state:

4

|   | a. | the nature of the suit, claim, or action; |
|---|----|---|
|   | b. | the court or agency; |
|   | c. | the court docket number and the name of the case; |
|   | d. | the disposition of the case; and |
|   | e. | the attorneys who represented the parties. |

Defendants responded as follows:

**<u>Specific Objection:</u>**   This interrogatory seeks information that is not reasonably calculated to lead to the discovery of admissible evidence that is relevant to the subject matter this case.  This interrogatory is calculated to harass and burden the defendant.

**Interrogatory Nos. 4 – 15** all stated identically as follows:

[]      Please describe any and all communications that took place between and/or among you and [various individuals or entities][2] concerning BIG and/or Ms. Tucker.  Please include in your answer:

|   | a. | when the communications took place; |
|---|----|---|
|   | b. | where the communications took place; |
|   | c. | who participated in the communications; |
|   | d. | the substance of the communications; and |
|   | e. | identify or attach a copy of any documents related to the communications. |

All six Defendants answered Interrogatory Nos. 4-15 with the following boilerplate

objection and answer:

**<u>Specific Objection:</u>**   Defendant objects to this interrogatory as overly broad, unduly burdensome and oppressive.  Although the defendant is in the process of producing documents relevant to this interrogatory, it would be impossible to recall all such oral communications.  In addition, requiring the Defendant to respond individually to this highly detailed interrogatory as to oral communications would

---

[2] Interrogatory Nos. 4 – 15 are identical except for the individuals identified within each one with whom communications may have occurred.  Therefore, in order to comply with Local Rule 3.04(a)'s requirement that each interrogatory or request for production be quoted in full but remain within Local Rule 3.01(a)'s 25-page limitation for motions, this Motion quotes substantially all of each of Interrogatory Nos. 4 – 15 above and reserves the identification of the individuals in each Interrogatory for this footnote.  Interrogatory Nos. 4 – 15 inquired into communications with one or more of the following individuals or entities: BVM and or Ms. Tucker; Clyde Fabretti; Mr. Wendler; Ms. Coberly; Mr. DeFazio; Ms. DeFazio; Mr. Post; Ms. Post; Ms. DiRito; Elizabeth Hazen; Ken Hazen; VVIT, Daniel Diaz De Arce, and/or Thomas Griffin; and anyone else.

provide little additional benefit and would be unduly expensive and time consuming.  The information sought as to oral communications can be obtained by deposition which would be more convenient and less burdensome.

**Response:**     Subject to the General and Specific Objections above, the answer to this Interrogatory, if any, may be determined by reviewing the documents produced by the Defendant in response to the plaintiff/counter-defendants' first set of request for production of documents served herein on June 4, 2012 and the communications set forth in the Second Amended Counterclaim (ECF No. 53).  Because the burden of deriving or ascertaining the answer will be substantially the same for either party, the Defendant will make all of her non-privileged e-mails, letters or other correspondence responsive to the June 4 document request available to the plaintiff/counter-defendants and provide the plaintiff/counter-defendants a reasonable opportunity to examine and copy such records pursuant to Rule 33(d), Federal Rules of Civil Procedure.

On August 30, 2012, BVM and Ms. Tucker's counsel stated Interrogatory No. 3 "is a standard area of inquiry . . . and is, in fact, discoverable," and Interrogatory Nos. 4-15 "are standard discovery inquiries," and "a party is required to provide all the information he or she can recall regarding those communications."  See August 30, 2012 Correspondence (Exhibit A) at 4-5.  Counsel cited case law to support these arguments, and he requested the Defendants supplement their answers by September 5, 2012.  Id.  The Defendants failed to respond to the letter or supplement their answers.  The parties conferred again, by telephone, on October 10, 2012, during which undersigned counsel referenced the August 30 letter and asked the Defendants again to supplement their answers.  Defendants failed to do so.[3]

### B.  Second Set of Interrogatories

BVM and Ms. Tucker propounded a second set of eight "contention" Interrogatories (the Second Set of Interrogatories) to each Defendant on July 27, 2012, which stated as follows:

---

[3] Despite repeated inquiries, Defendants also failed to respond whether they would supplement Interrogatory No. 3.

1.      Please state, with particularity, the basis for, and identify any documents related to, your denial in Paragraph 90 of your Answer that "If BIG returned to the Defendants and Ms. DiRito their contributions totaling $105,000, it would render BIG insolvent."

2.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 30 of your Counterclaim that "At the time each of the counter-plaintiffs made their respective investments in Big Voices they expected to receive the 'financial participation' promised to them by Billie Tucker."

3.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 30 of your Counterclaim that Ms. Tucker "promised" you "financial participation."

4.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 34 of your Counterclaim that "Billie Tucker had by this date caused other unsuspecting members of the general public to purchase the unregistered securities of Big Voices at $250, $5,000, and $10,000."

5.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 48 of your Counterclaim that "At the time Big Voices and Billie Tucker took the investment monies from the counter-plaintiffs, Billie Tucker had no intention to (i) have Big Voices 'launched and streaming' by 'no later than December 1, 2011,' (ii) limit the $25,000 Founding member investment level to 9 or less seats, (iii) deliver an operating agreement or investment contract to the counter-plaintiffs consistent with the November 1, 2011 'Business Plan,' (iv) have a 'Board of Advisors' which would meet each month, (v) provide the counter-plaintiffs with a meaningful opportunity to vote as to who would be allowed to associate with or participate in Big Voices, (vi) disclose the fact that she had engaged, or intended to engage, persons not identified in the 'Business Plan' dated November 1, 2011 to manage or participate in the management of the business operations of Big Voices or (vii) disclose the fact that she had engaged, or intended to engage, a former criminal felon to participate in the management of Big Voices."

6.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 76 of your Counterclaim that "Counter-defendants acted at all times with scienter."

7.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 78 of your Counterclaim that "Counter-defendants misrepresentations and omissions were made for the purpose of enriching themselves at the expense of counter-plaintiffs."

8.      Please state, with particularity, the basis for, and identify any documents related to, your contention in Paragraph 111 of your Counterclaim that, in exchange for $100,000, "the counter-plaintiffs did not receive anything from the counter-defendants."

Defendants responded on August 29, 2012, with a set of identical boilerplate objections:

1.      On June 4, 2012, the plaintiff/counter-defendants served their first set of interrogatories on defendant . . . which, including sub-parts, totaled 29 interrogatories in number (the "First Set of Interrogatories"). Notwithstanding the fact that the First Set of Interrogatories exceeded the 25 interrogatory limit imposed by Rule 33(a)(1), Federal Rules of Civil Procedure, defendant . . . served a response to those interrogatories on August 8, 2012.

2.      The Second Set of Interrogatories now asserts an additional 16 interrogatories, including subparts. Accordingly, [defendant] objects to the Second Set of Interrogatories because the total number of interrogatories served upon her now far exceeds the 25 interrogatory limit imposed by Rule 33(a)(1), Federal Rules of Civil Procedure.

3.      All other objections to the Second Set of Interrogatories are reserved to the extent that such reservation may be necessary.

On September 6, 2012, BVM and Ms. Tucker's counsel requested that the Defendants answer the Interrogatories because (1) the Defendants waived their Objections when they answered the First Set of Interrogatories instead of objecting that they exceeded the 25-Interrogatory limit; (2) the Defendants were, in any event, required to answer the Interrogatories above if BVM and Ms. Tucker offered to strike the simultaneous document requests in each of the Interrogatories, which they did;[4] and (3) the simultaneous document requests did not impose any additional burden on the Defendants because those requests were mirrored by requests in BVM and Ms. Tucker's Requests for Production. See September 6, 2012 Email (Exhibit B). Counsel again cited case law to support these arguments, and he requested the Defendants

---

[4] Defendants had not indicated in their Objections whether they considered the simultaneous document requests to be separate and discreet Interrogatories. BVM and Ms. Tucker reasonably assumed, however, that the simultaneous requests formed the basis for the Defendants' Objections.

supplement their answers by September 13, 2012.  Id.  The Defendants failed to respond to the email or answer the Interrogatories.

The parties conferred again, by telephone, on October 10, 2012.  During that discussion, Defendants' counsel revealed that the Defendants did in fact consider the simultaneous document requests within each Interrogatory (in both the First and Second Set of Interrogatories) as separate and discreet Interrogatories under Rule 33(a)(1).  Indeed, in their Objections, Defendants claimed the First Set of Interrogatories "totaled 29 interrogatories,"[5] and the Second Set of Interrogatories "assert[] an additional 16 interrogatories."[6]  BVM and Ms. Tucker's counsel, nevertheless, referenced their September 6 email and asked the Defendants to provide answers.  Counsel also explained that the Defendants should easily be able to answer these Interrogatories because (1) they inquire into the evidentiary bases for specific allegations in the Defendants' Counterclaim, and (2) Defendants' counsel was required to establish some evidentiary support for those allegations before the Counterclaim was filed.  See Fed. R. Civ. P. 11.  Defendants, however, refused to answer the Interrogatories.

## C.  Text Messages

BVM and Ms. Tucker also propounded a set of Requests for Production on June 4, 2012. The Requests asked for the following documents:

> 1.      All documents referenced in your Initial Disclosure.
> 2.[-25.]   All documents related to communications that took place between and/or among you and [various individuals or entities][7] concerning BIG and/or Ms. Tucker.

---

[5] 13 of the 16 Interrogatories in the First Set of Interrogatories contain requests for related documents.

[6] All eight Interrogatories in the Second Set of Interrogatories contain requests for related documents.

[7] Request Nos. 2 – 25 are identical except for the individuals identified within each one with whom communications may have occurred.  For the same reasons stated in footnote 1, this Motion quotes substantially all of each of Request Nos. 2 – 25 above and reserves the identification of the individuals in each Request for this footnote.  Request Nos. 2 – 25 inquired into communications with one or more of the following individuals or entities: BVM and/or Ms. Tucker; Mr. Wendler; Ms. Coberly; Mr. DeFazio; Ms. DeFazio; Mr. Post; Ms. Post; Ms. DiRito; Clyde Fabretti; Ron DeSantis; Andy Sanfilippo; Thomas Trevisani; Henry Madden; Gayla Reed; Michael

26.　　　All documents related to communications concerning Thomas Trevisani.

27.　　　All documents related to communications concerning Clyde Fabretti.

28.[-49.] All documents related to [various individuals or entities][8] concerning BIG and/or Ms. Tucker.

50.　　　All documents related to Thomas Trevisani.

51.　　　All documents related to Clyde Fabretti.

52.　　　All documents related to each and every agreement between you and Mr. Post and/or the law firm Smith, Hulsey & Busey concerning BIG, Ms. Tucker, and/or this Action.

53.　　　All documents related to all Contributions you . . . made to BIG, including, but not limited to, checks, wire transfers, and cash transfers.

54.　　　All documents related to all money or other compensation you paid or transferred to BIG and/or Ms. Tucker, including, but not limited to, checks, wire transfers, and cash transfers.

55.　　　All documents you prepared for or on behalf of BIG and/or Ms. Tucker.

56.　　　All documents related to all money or other compensation BIG and/or Ms. Tucker paid or transferred to you, including, but not limited to, checks, wire transfers, and cash transfers.

57.　　　All documents related to all meetings and/or communications on November 16, 2011, concerning BIG and/or Ms. Tucker.

58.　　　All recordings, including audio and/or video recordings and whether created or prepared by you or on your behalf, related to BIG and/or Ms. Tucker.

59.　　　All documents related to any equipment that was used by you or on your behalf to record any communications or meetings related to BIG and/or Ms. Tucker.

60.　　　All documents related to any and all operating agreements concerning BIG.

61.　　　All documents related to any other agreements concerning BIG.

62.　　　All documents related to any and all business plans concerning BIG.

63.　　　All documents related to the October 16 Event.

64.　　　All documents related to the Counterclaim.

65.　　　All documents related to this Action.

---

Reed; Connie Turner; Lynne Holicky; Jason Hoyt; Lindsey Curry; Elizabeth Hazen; Ken Hazen; VVIT, Daniel Diaz De Arce, and/or Thomas Griffin; Alan Fraser; Pete Braud; and anyone else.

[8] Request Nos. 28 – 49 are identical except for the individuals identified within each one with whom communications may have occurred.  For the same reasons stated in footnote 1, this Motion quotes substantially all of each of Request Nos. 28 – 49 above and reserves the identification of the individuals in each Request for this footnote.  Request Nos. 28 – 49 inquired into documents related to one or more of the following individuals or entities: BVM and/or Ms. Tucker; Mr. Wendler; Ms. Coberly; Mr. DeFazio; Ms. DeFazio; Mr. Post; Ms. Post; Ms. DiRito; Ron DeSantis; Andy Sanfilippo; Henry Madden; Gayla Reed; Michael Reed; Connie Turner; Lynne Holicky; Jason Hoyt; Lindsey Curry; Elizabeth Hazen; Ken Hazen; VVIT, Daniel Diaz De Arce, and/or Thomas Griffin; Alan Fraser; Pete Braud; and anyone else.

Defendants responded as follows to **Requests 1, 3-6, 8-21, 23-27, 29-32, 34-45, 47-54, and 56-63**:

**Response:**

Subject to the foregoing specific and general objections, the Defendant will produce any non-privileged documents responsive to this request in a joint production at a time and place mutually agreeable to counsel for the parties.

Defendants responded as follows to **Requests 2 and 28**:

**Specific Objection:**

Defendant objects to this request as vague, unintelligible and overly broad because the Defendant does not know the identity of all persons "affiliated with, associated with, employed or contracted by, or acting on behalf of BIG and/or Ms. Tucker."

**Response:**

Subject to the foregoing specific and general objections, the Defendant will produce any non-privileged documents responsive to this request in a joint production at a time and place mutually agreeable to counsel for the parties.

Defendants responded as follows to **Request 7**:

**Specific Objection:**

Defendant will not produce any such documents subject to the husband-wife privilege.

**Response:**

None.

Defendants responded as follows to **Requests 22 and 46**:

**Specific Objection:**

Defendant objects to this request as vague, unintelligible and overly broad because the Defendant does not know the identity of all persons "affiliated with, associated with, employed or contracted by, or acting on behalf of VVIT."

**Response:**

Subject to the foregoing specific and general objections, the Defendant will produce any non-privileged documents responsive to this request in a joint production at a time and place mutually agreeable to counsel for the parties.

Defendants responded as follows to **Request 33**:

**Specific Objection:**

Defendant will not produce any such documents subject to the husband-wife privilege.

**Response:**

Subject to the foregoing specific and general objections, the Defendant will produce any non-privileged documents responsive to this request in a joint production at a time and place mutually agreeable to counsel for the parties.

Defendants responded as follows to **Request 55**:

**Response:**

None.

Defendants responded as follows to **Requests 64 and 65**:

**Specific Objection:**

Defendant objects to this request calling for "all" documents "related to" [the Counterclaim and Action] on the ground that such request is vague, overly broad and unduly burdensome. It is impossible for anyone to identify "all" documents which could be "related to" [the Counterclaim or Action]. In addition, because this request purports to seek every scrap of information that could relate to this request, it is unduly burdensome. It is not practicable for this Defendant to review every document or ESI data point in his possession to determine if any are responsive to this vague and ambiguous request. In any event, this request demands information which necessarily requires a lawyer's "mental process" and, therefore violates the work product doctrine.

**Response:**

Subject to the foregoing specific and general objections, the Defendant will produce any non-privileged documents responsive to this request in a joint production at a time and place mutually agreeable to counsel for the parties.

With respect to the production of documents in response to these Requests, Defendants initially proposed that "mobile phones" not be searched. See July 26, 2012 Email (Exhibit C).

BVM and Ms. Tucker disagreed and stated "[t]ext messages were a significant source of communication between [BVM and Ms. Tucker] and some of [the Defendants] before this dispute arose."  See August 2, 2012 Email (Exhibit D).  In fact, "[f]or one [Defendant], in particular, text messaging was almost the only method of communication she used to communicate with Ms. Tucker and [BVM]."  Id.  BVM and Ms. Tucker requested that the Defendants search their mobile phones for relevant communications.  Id.

The Defendants responded on August 7, 2012, and argued text messages were "not reasonably accessible" under Rule 26(b)(2)(B) and explained that (1) "extracting information from mobile phones . . . can be expensive and burdensome," and (2) such messages may be "duplicative" of other communications.  See August 7, 2012 Correspondence (Exhibit E) at 3.

BVM and Ms. Tucker responded and (1) cited the Defendants' burden to establish text messages are not reasonably accessible because of undue burden or cost, (2) argued good cause, nevertheless, exists for obtaining the Defendants' text messages because of their prevalence in everyday communication and the specific relevance of the text messages here, and (3) referenced the Defendants' contradictory position in that their own requests for production (Doc.# 77-1 at 16-17) and August 7, 2012 letter (Ex. E at 2) requested that BVM and Ms. Tucker produce text messages.  See August 13, 2012 Correspondence (Exhibit F) at 5-6.  BVM and Ms. Tucker also requested the Defendants provide an explanation regarding the purported burden of producing text messages.  Id. at 6.  The parties conferred by telephone on August 13, 2012.  See August 14, 2012 Email (Exhibit G) at 1.  Defendants continued to refuse to produce text messages, primarily citing the cost of extracting them from mobile phones.  In particular, Defendants' counsel cited an estimate that it would cost "$1,000 per phone" to extract such messages.  Nevertheless, in an

effort to continue to confer on this issue, the parties agreed to exchange their respective cost estimates for extracting text messages.  Id. at 2

Defendants failed, however, to produce any estimate.  Rather, on August 17, 2012, they stated—for the first time—that their "mobile phones was not specified in the Agreed Discovery Protocol" and reiterated it "is not reasonably accessible due to the undue burden and cost of extraction."  See August 17, 2012 Correspondence (Exhibit H) at 6-7.[9]

BVM and Ms. Tucker disagreed and (1) referenced the Defendants' own requests for production of text messages, (2) noted the existence of relevant text messages between the Defendants that did not involve BVM or Ms. Tucker, (3) emphasized that producing text messages from Iphones is *free*, (4) reminded the Defendants that the burden was on them to establish that text messages are not reasonably accessible, and (5) requested that the Defendants provide BVM and Ms. Tucker with the purported "$1,000" estimate they claimed to have.  See August 21, 2012 Email (Exhibit I).  Later that day, BVM and Ms. Tucker's counsel provided the Defendants with a proposal for extracting text messages from Iphones that involved taking screenshots of the message strings and producing them as image files.  See August 21, 2012 Email (Exhibit J).  This method is *free* and requires just minutes of the Defendants' time.  See id.

Defendants responded almost two weeks later and labeled the proposal "cumbersome, unreliable and not forensically defensible," offered no other explanation for that response, and failed to indicate whether they would produce text messages.  See August 30, 2012 Email (Exhibit K).  They also—for the first time—raised a question regarding whose phones would be searched and requested that BVM produce text messages from the mobile phones of third-party contractors.  See id.  BVM and Ms. Tucker promptly responded and explained their proposal

---

[9] Defendants did reference the parties' agreement to exchange estimates for the cost of extracting text messages.  See Ex. H. at 6-7.  However, rather than satisfy their burden of demonstrating the cost of extraction, Defendants merely asked for a date upon which the parties would exchange estimates.  Id. at 7.

would alleviate the Defendants of any cost or burden and offered to stipulate to an agreement on forensic back-up for the messages for purposes of authentication.[10]  See August 30, 2012 Email (Exhibit L).  BVM and Ms. Tucker also explained they would search for and produce all text messages within their possession, custody, or control.  See id.

The parties further discussed this issue during the aforementioned October 10, 2012 telephone conference.  Yet Defendants again refused to produce text messages.  They reiterated the Protocol did not cover them.  In addition—and most troubling—the Defendants expressly conditioned any production of text messages on BVM and Ms. Tucker's production of **Clyde Fabretti's** text messages.  They failed, however, to cite authority allowing a party to **condition** the production of discoverable information.  The parties could not reach any agreement.

To date, the Defendants have failed to supplement their answers to the First Set of Interrogatories, answer the Second Set of Interrogatories, and produce text messages.  Their refusal has forced BVM and Ms. Tucker to file this Motion.

III. **MEMORANDUM OF LAW: THE COURT SHOULD ORDER DEFENDANTS TO SUPPLEMENT THEIR ANSWERS TO INTERROGATORY NOS. 3-15 OF THE FIRST SET OF INTERROGATORIES, ANSWER THE SECOND SET OF INTERROGATORIES, AND PRODUCE TEXT MESSAGES**

A. **Defendants Are Required to Supplement Their Answers to Interrogatory Nos. 3-15 of the First Set of Interrogatories**

i. **Interrogatory No. 3**

Interrogatory No. 3 requests information regarding the Defendnats' recent civil and criminal litigation history.  The Defendants objected based on relevance, accused BVM and Ms. Tucker of harassing them, and have refused to provide any information.

---

[10] "The parties are encouraged to stipulate to the authenticity and identifying characteristics . . . of electronic information that is not self-authenticating."  Middle District Discovery at 22.

This objection is improper.  This Interrogatory is a standard inquiry, and the information it seeks is discoverable.  See Ran v. Infinite Energy, Inc., No. 1:07-cv-249-MMP-AK, 2009 U.S. Dist. LEXIS 122959, at *4 (N.D. Fla. Dec. 14, 2009) (in a Title VII case, granting motion to compel answer to interrogatory requesting civil and/or criminal proceedings to which plaintiff had been a party, despite plaintiff's response that the interrogatory was "self-incriminating," because "[p]laintiff's participation as a party in other court cases is not privileged").

Moreover, the information is relevant.  Federal Rule of Evidence 609 expressly allows a party to impeach a witness's character for truthfulness with evidence of a criminal conviction. Each of the Defendants is a witness in this case, and any involvement they may have had in past civil or criminal proceedings is, therefore, relevant.  See Fed. R. Evid. 609.  Accordingly, the Court should order the Defendants to answer Interrogatory No. 3.  See Ran, supra.

### ii.  Interrogatory Nos. 4-15

Interrogatory Nos. 4-15 requested a description of "communications that took place between and/or among" each Defendant and every other Defendant, BVM, Ms. Tucker, and several third parties, including Carla DiRito, Clyde Fabretti, Ken Hazen, Elizabeth Hazen, VVIT, and anyone else. The Defendants objected and, instead, (1) referred to documents that had yet to be produced that purportedly contain the communications requested, (2) referred to depositions as a "more convenient and less burdensome" method for inquiring about these communications, and (3) stated "it would be impossible to recall all such oral communications."

These objections are improper.  Defendants do not deny that relevant, discoverable communications exist.  Therefore, when an interrogatory requests information concerning such communications, a party is required to provide all the information he or she can recall regarding them.  See Lockwood v. Shands Jacksonville Med. Ctr., Inc., No. 3:09-cv-376-J 20MCR, 2010 U.S. Dist. LEXIS 50565, at *8 (M.D. Fla. May 21, 2010) (ordering defendant to provide

supplemental response to interrogatory that requested identification of all employees and former employees defendant communicated with, the dates of such communications, who initiated each communication, and the substance of each communication).  In addition, a party is prohibited from referencing documents in lieu of answering.  See Horowitch v. Diamond Aircraft Indus., No. 6:06-CV-1703-Orl-19JGG, 2007 U.S. Dist. LEXIS 29626, at *9 (M.D. Fla. Apr. 23, 2007) (granting motion to compel better answer to interrogatory that requested that defendant describe communications between defendant and plaintiff related to contract at issue, where defendant's answer initially incorporated general objections, claimed privilege, and referred to defendant's initial disclosures and documents produced).

Interrogatory Nos. 4-15 request information that is relevant to the claims and defenses in this case.  Defendants alleged claims for fraud, negligent misrepresentation, and securities violations.  These claims are premised on ***communications*** between BVM/Ms. Tucker and the Defendants.  By refusing to answer these Interrogatories, Defendants are failing to meet their own burden to prove their claims, and they are denying BVM and Ms. Tucker the ability to defend themselves and fully respond.  These Interrogatories are also designed to focus and limit the areas of inquiry during the Defendants' depositions and, thus, help the parties and their counsel save time and money.  The Court should order the Defendants to answer Interrogatory Nos. 4-15.  See Lockwood, supra; Horowitch, supra.

### B.  Defendants Are Required to Answer the Second Set of Interrogatories

The Defendants served Objections to the Second Set of Interrogatories and claimed that, along with the First Set of Interrogatories, they exceeded the 25-Interrogatory limit under Federal Rule of Civil Procedure 33(a)(1).  Notwithstanding these Objections, however, Defendants are required to answer the Second Set of Interrogatories.

### i. Defendants waived their objections.

In their responses to the First Set of Interrogatories, the Defendants failed to object and state that they exceeded the 25-interrogatory limit under Rule 33(a)(1).  Rather, the Defendants **answered all** of the Interrogatories:[11] they admitted in their Objections to the Second Set of Interrogatories that, "[n]otwithstanding the fact that the First Set of Interrogatories exceeded the 25 interrogatory limit . . . [D]efendant . . . served a response to those interrogatories on August 8, 2012."  See supra p. 8.

"When a party believes that another party has asked too many interrogatories," however, "the party to which the discovery has been propounded **should object to all interrogatories or file a motion for protective order**."  Allahverdi v. Regents of the Univ. of N.M., 228 F.R.D. 696, 698 (D.N.M. 2005) (emphasis added).  "The responding party should not answer some interrogatories and object to the ones to which it does not want to respond."  Id.  The Middle District of Florida's Discovery Handbook establishes the same standard: "Absent compelling circumstances, failure to assert objections to an interrogatory within the time for answers constitutes a waiver and will preclude a party from asserting the objection in a response to a motion to compel."  Middle District Discovery (2001) at 15.

Here, the Defendants failed to object to **any** of the First Set of Interrogatories on the basis that they exceeded the numerical limit.  They responded to all of them and waived their objections.  See id. at 698 (holding that, "[b]y answering some and not answering others, the Defendants waived this objection").  On this ground alone, the Court should order the Defendants to respond to the Second Set of Interrogatories.

---

[11] As explained above, however, those Answers are inadequate.

**ii. Even if Defendants did not waive their objections, they are required to answer the Interrogatories in light of BVM and Ms. Tucker's offer to redact the simultaneous document requests.**

In an effort to confer with the Defendants and achieve some resolution, BVM and Ms. Tucker offered to redact the simultaneous document requests in *all* of the Interrogatories they had served to date.  Defendants refused this compromise.  When a party provides this modification, however, courts allow it and consider the Interrogatories in their redacted form rather than as initially served.  See, e.g., Mitchell Co. v. Campus, No. CA 07-0177-KD-C, 2008 U.S. Dist. LEXIS 47505, at *46 (S.D. Ala. Jun. 16, 2008) (court considered defendant's 24 interrogatories in their redacted form set forth in the motion after defendant redacted all demands for documents . . . contained in the interrogatories . . . , and rejected plaintiff's argument that the court must view the interrogatories as initially served).

Accordingly, here, the Court should consider the First and Second Set of Interrogatories as constituting a total of 24 Interrogatories (rather than 45, as the Defendants have alleged, see supra p. 9), and order the Defendants to answer the Second Set of Interrogatories in their redacted form.  See Mitchell, 2008 U.S. Dist. LEXIS 47505 at *46 (granting, in part, motion to compel answers to interrogatories, where court considered 24 interrogatories in their redacted form after defendant redacted all demands for documents).

**iii. The simultaneous document requests did not impose any additional burden on the Defendants.**

As a practical matter, Defendants should not be permitted to avail themselves of the 25-Interrogatory limit because they have not suffered any burden at all.  The simultaneous document requests in the First Set of Interrogatories are mirrored by identical requests in BVM and Ms. Tucker's First Set of Requests for Production.  The document requests in the Second Set of Interrogatories, too, are encompassed within the Requests for Production.  Defendants were,

therefore, already obligated, and have undertaken efforts, to search for and produce documents responsive to those requests.  In addition, the Defendants did not labor over their Objections to the Second Set of Interrogatories.  Each set is one-and-a-half pages, and they are identical.

The Second Set of Interrogatories are proper "Contention Interrogatories" that are appropriately "designed . . . to target claims . . . or contentions that [undersigned counsel] suspects may be the proper subject of early . . . resolution" and "identify and narrow the scope of unclear claims . . . and contentions."  See Middle District Discovery at 16.  Permitting the Defendants to rely on a technical argument to avoid answering these Interrogatories would enable them to avoid answering important inquiries that isolate and inquire into key issues related to their allegations.  The Defendants will ultimately be required to provide this information anyway to prove their claims.  Answering these Interrogatories now would help the parties assess the strengths and weaknesses of those claims sooner rather than later.

### C.  Defendants Are Required to Produce Text Messages

#### i.  Text messages are discoverable.

Defendants have also refused to produce text messages.  Under Federal Rule of Civil Procedure 26, however, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Moreover, recent courts have held that text messages are discoverable under Rule 26 and have ordered parties to comply with requests for text messages under Rule 34.  See Flagg v. City of Detroit, No. 05-74253, 2009 U.S. Dist. LEXIS 96451, at *7-*9 (E.D. Mich. Oct. 19, 2009) (holding that 36 text messages were relevant and, thus, discoverable under Rule 26 and pursuant to a Rule 34 request); see also Mintz v. Mark Bartelstein & Assocs., No. CV 12-02554 SVW (SSx), 2012 U.S. Dist. LEXIS 119229, at *15 (C.D. Cal. Aug. 14, 2012) ("Defendants may request documents reflecting the content of Plaintiff's relevant text messages . . . by serving a request for production of documents on

Plaintiff pursuant to Rule 34."); <u>Special Mkts. Ins. Consultants, Inc. v. Lynch</u>, No. 11 C 9181,

2012 U.S. Dist. LEXIS 61088, at *10 (N.D. Ill. May 2, 2012) (noting that plaintiff can "obtain e-

mail or text messages that are relevant and within the scope of discovery" by "serv[ing]

document requests on the [Defendants], which under . . . Rule . . . 34 may require the production

of electronically-stored information, including e-mail and text messages"); <u>Robinson v. Jones</u>

<u>Lang LaSalle Ams., Inc.</u>, No. 3:12-cv-00127-PK, 2012 U.S. Dist. LEXIS 123883, at *3-*5 (D.

Or. Aug. 29, 2012) (noting there is "no principled reason to articulate different standards for the

discoverability of communications through email, text message, or social media platforms," and

ordering plaintiff to produce relevant text messages).[12]

## ii.  The parties agreed to produce text messages.

The parties did not exclude text messages from document production.  Defendants will,

nevertheless, likely argue that text messages were not included in the parties' Agreed Discovery

Protocol ("Protocol") (Doc. #38-1).  This is false.  The Protocol broadly defines "Discoverable

Electronic Information" as "***discoverable documents and data existing in electronic form***

consistent with Fed.R.Civ.P. 34(a), including by way of example and ***not by way of limitation*** . .

. e-mail, calendars, word processing documents, spreadsheets, electronic slide presentations,

databases, and ***other electronic data items containing information relevant to the claim(s) or***

***defense(s) of any party or the subject matter involved in the action***."  <u>See</u> Doc. #38-1 at 2 n.1

(emphases added).  Nothing else in the Protocol or anywhere else memorialized any agreement

between the parties to exclude text messages from production.

---

[12] Indeed, although Rule 34 does not define "electronically-stored information," the 2006 advisory committee note states that "Rule 34(a)(1) is expansive and includes ***any type of information that is stored electronically***."  Fed. R. Civ. R. 34 advisory committee note (2006) (emphasis added).  "The rule covers . . . information 'stored in any medium,' to encompass future developments in computer technology," and so it "is intended to be broad enough to cover ***all current types of computer-based information***, and flexible enough to encompass future changes and developments."  <u>Id.</u> (emphasis added).

Instead, consistent with the framework of Rule 26 and recent case law, BVM and Ms. Tucker's Requests for Production defined "Document" as "all original writings of any nature whatsoever . . . in your possession, custody, or control, . . . and includ[ing] . . . e-mail, electronically-stored information, *text messages*, [and] non-traditional methods of recording data and information."  The Requests also defined "Communication" as "any written, oral, or electronic transmission of fact, information, intention, or opinion, . . . including, but not limited to, documents, correspondence, e-mail, electronically-stored information, and ***text messages***, in any form whatsoever, including, but not limited to, telephone, in person, e-mail, or meeting."

### iii.   Text messages are relevant and should be produced.

Defendants do not dispute that text messages are relevant to this case.  Indeed, like the communications addressed by the First Set of Interrogatories, text messages contain communications critically relevant to the Defendants' fraud, negligent misrepresentation, and securities claims.  In addition, text messages amongst the Defendants contain communications relevant to BVM and Ms. Tucker's breach of duty claims against them.  Like any other communication—whether an email or verbal conversation—text messages are relevant to the claims and defenses in this case and should be produced.  See supra pp. 21-22.

### iv.   The production of text messages is inexpensive.

Defendants will argue that text messages are not reasonably accessible because of undue burden or cost, but the burden is on ***them*** to establish that.  Under Rule 26(b)(2)(B), "[o]n motion to compel discovery or for a protective order, the party . . . ***must show*** that the information is not reasonably accessible because of undue burden or cost."  Here, the Defendants have failed to provide any evidence that text messages are not reasonably accessible or expensive to extract.  Despite repeated requests for a "$1000-per-phone" estimate the Defendants claimed to have, no such estimate was ever provided.  By contrast, BVM and Ms. Tucker demonstrated a simple and

free method for extracting Iphone text messages and obtained and referenced a $500-per-phone estimate during the parties' last telephone conference.  See October 10, 2012 Email (Exhibit M). Defendants can, therefore, easily extract and produce text messages inexpensively.

<b>v.  There is good cause for production of text messages.</b>

Even if the Defendants can establish text messages are not reasonably accessible because of undue burden or cost (they cannot), "the court may nonetheless order discovery from such sources if the requesting party shows good cause."  Fed. R. Civ. P. 26(b)(2)(B).  Good cause exists here.  Text messaging has become a way of life in the 21st century, and recent courts have routinely ordered their production.  See supra pp. 21-22.  In addition, there are relevant communications between the Defendants and BVM and Ms. Tucker that are central to the parties' claims and defenses.  See supra. p. 23.  Moreover, there are text messages concerning BVM and Ms. Tucker that only the Defendants have in their possession, custody, or control, and, thus, are not duplicative.  Indeed, upon information and belief, at least one of the Defendants communicated almost exclusively by text messaging.  Without these communications, BVM and Ms. Tucker will be prejudiced and unable to fully defend the Defendants' claims or prove their own claims.  The Court should order their production.

### D.  The Court Should Order Sanctions Against the Defendants

Federal Rule of Civil Procedure 37(a)(5)(A) states that, "[i]f [a] motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court ***must*** . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

The Defendants have failed to answer ***21*** of 24 Interrogatories, and they have failed to produce text messages or demonstrate that such messages are "not reasonably accessible."

23

Undersigned counsel made a good faith effort to persuade the Defendants on several occasions, both in writing and by telephone, to comply with their discovery obligations.  Counsel even presented legal authority that expressly requires the Defendants to answer the Interrogatories and produce text messages.  He also suggested two avenues for extracting such messages, including one that imposed no cost or burden at all.  In response, Defendants have refused to comply, and they have failed to produce any support for the burden or cost they claim they would be forced to incur to produce text messages.  Given these circumstances, Defendants' actions are not substantially justified.  This Court should, therefore, order the Defendants to pay BVM and Ms. Tucker's expenses and fees in connection with bringing this Motion.  See Fuller v. Citrus Cardiology Consultants, P.A., No. 5:11-cv-136-Oc-10TBS, 2011 U.S. Dist. LEXIS 139419, at *4 (M.D. Fla. Dec. 5, 2011) (ordering plaintiff to pay defendant its reasonable fees and costs incurred in filing motion to compel, where plaintiff failed to answer defendant's interrogatories and requests for production); Broad. Music, Inc. v. Bourbon St. Station, Inc., No. 3:09-cv-468-J-25MCR, 2010 U.S. Dist. LEXIS 12555, at *4 (M.D. Fla. Jan. 26, 2010) (ordering defendant to pay plaintiff's expenses incurred in bringing motion to compel responses to requests for production and interrogatories); Merriweather v. Latrese & Kevin Enters., 2009 U.S. Dist. LEXIS 68986, at *6-*7 (M.D. Fla. (ordering defendants to pay plaintiff's expenses, including reasonable attorney's fees, associated with bringing motion to compel responses to plaintiff's interrogatories, request for production, and request for admission).

## IV. CONCLUSION

For the foregoing reasons, BVM and Ms. Tucker respectfully request that this Court (1) grant this Motion, (2) order the Defendants to pay BVM and Ms. Tucker's expenses and attorney's fees incurred in bringing this Motion, and (3) grant any other relief deemed just and necessary.

Respectfully submitted,

BIG VOICES MEDIA, LLC and
BILLIE TUCKER,

By their attorneys,

Dated:  October 22, 2012

| | |
|---|---|
| /s/ Robert M. Fojo, Esq. | /s/ Jeffrey W. Gibson, Esq. |
| Robert M. Fojo, Esq. *pro hac vice* | Jeffrey W. Gibson, Esq. |
| Hinckley, Allen & Snyder LLP | Macfarlane Ferguson & McMullen |
| 11 South Main Street, Suite 400 | P.O. Box 1531 |
| Concord, NH 03301-4810 | 201 North Franklin Street, Ste. 2000 |
| Tel: (603) 225-4334 | Tampa, FL  33601 |
| Fax: (603) 224-8350 | Tel:  813-273-4200 |
| Email: rfojo@haslaw.com | Fax:  813-273-4396 |
| | Email:  jg@macfar.com |

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the ECF system on October 22, 2012, will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).  To the best of my knowledge, information, and belief, there are no non-registered participants.

/s/ Robert M. Fojo
Robert M. Fojo, Esq., *pro hac vice*